UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SYED K. HASAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 14-14196-LTS |
| | ) | |
| NAVIENT SOLUTIONS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

March 11, 2016.

SOROKIN, J.

Pro se Plaintiff Syed K. Hasan ("Hasan") brings this action for damages and equitable relief against Defendant Navient Solutions Inc., formerly known as Sallie Mae, Inc. (collectively "Sallie Mae"), in connection with Sallie Mae's servicing of Hasan's educational loans, including allegedly improperly reporting certain defaulted loans to the credit reporting agencies ("CRAs"), and "re-aging" the loans so that they appear on his credit report for longer than allowed by law. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Cross Motion for Summary Judgment is ALLOWED.

I.   BACKROUND

Hasan alleges a litany of offenses committed by Sallie Mae in connection with its servicing of his educational loans, including among other things, that: (1) Sallie Mae "provided scant documentation on loan accounts"; (2) several loans "do not have original creditor information,"; (3) there is no signed application for another loan; (4) Sallie Mae cannot prove the

existence of several other loans; (5) some loans "were declined," and; (6) dates on loans were changed in order to lengthen the time for the "statute of limitations." Doc. 1-1 at 1-3.[1] Based on these initial allegations, Hasan claims that Sallie Mae violated Mass. Gen. L. ch. 93A § 9 and 940 CMR 7.00, for which he seeks $3 million and removal of all accounts reported as delinquent from his "credit files." Id.[2]

Now in his Motion for Summary Judgment, after an opportunity for discovery, Hasan has narrowed his complaints about Sallie Mae. His now complains that: (1) Sallie Mae has not provided him with "an assignment showing that the loans were transferred from or to Sallie Mae from the original lenders and/or assigned or transferred to and or from Navient," and; (2) that he never sought to defer some of the loans so that Sallie Mae was wrong to "re-age" the loans for purposes of his credit report. Doc. 63 at 1-2. Based on these two remaining complaints, Hasan additionally asserts that Sallie Mae is in violation of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681c § 605.[3]  Doc. 63 at 12. Sallie Mae does not have any pending claims of its own.

II.   RELEVANT MATERIAL FACTS

Hasan financed his medical degree and two PhD's by borrowing a significant amount through the Department of Education as well from "private banks, which are private loans through the Sallie Mae network." Doc. 63 at 3 (Hasan Affidavit). At issue are two groups of

---

[1] Citations are to the court's Electronic Filing System ("ECF") and cited as "Doc. ____ at ___." The page numbers appear on the upper right hand corner on ECF.

[2] In his deposition Hasan testified that the $3 million figure was just thrown out there to get the attention of Sallie Mae and he really does not seek money in this action, but he just wants his credit report to be cleaned up. Doc. 73-1 at 4.
`
[3] The two issues set out are the only two issues now properly before the Court. The Court deems waived, with prejudice, all other issues and claims not pressed by Hasan in his Motion for Summary Judgment. Mottram v. Shaw's Supermarket, Inc., Civ. No. 11-10978-RWZ, 2012 U.S. Dist. LEXIS 132448, at * 11 (D. Mass. Sept. 18, 2012).

private loans—three "EFG Select International Medical School" loans ("EFG" loans) and seven "Signature" student loans ("Signature Loans"). Id.; Doc. 63 at 1; Doc 70 at 1-3. Sallie Mae submitted for ease of reference two charts showing the ten private loans in issue. Doc. 71 at 3. The charts show that the loans were assigned to new holders over the course of time:

| EFG Loan Number | Disbursement Date | Original Principal | Originating Bank | Purchase Date | Current Holder |
|---|---|---|---|---|---|
| 9-1 (Hasan Loan 9-1) | 04-03-01 | $14,148.94 | Richland State Bank | 11/18/03 | AMS (affiliate of Navient f/k/a Sallie Mae) |
| 14-1 (Hasan Loan 14-1) | 12-11-01 | $13,360.00 | Richland State Bank | 11/18/03 | ECFC (affiliate of Navient f/k/a Sallie Mae) |
| 19-1 (Hasan Loan 19-1) | 12-31-02 | $11,369.41 | Richland State Bank | 11/18/03 | AMS (affiliate of Navient f/k/a Sallie Mae) |

Id.

| Signature Loan Number | Disbursement Date | Original Principal | Originating Bank | Purchase Date | Current Holder |
|---|---|---|---|---|---|
| xxxxxxxxxx5155 (Hasan Loan 20) | 09-19-03 | $8,910.00 | Bank One | 6/8/06 | SLM Trust 2006-B |
| xxxxxxxxxx5163 (Hasan Loan 1) | 10-14-03 | $3,819.00 | The First National Bank in Sioux Falls | 6/8/06 | SLM Trust 2006-B |
| xxxxxxxxxx5171 (Hasan Loan 4) | 11-14-03 | $3,700.00 | Bank One | 5/26/04 | SLM Trust 2006-B |
| xxxxxxxxxx5189 (Hasan Loan 7) | 07-02-04 | $8,942.00 | Bank One | 6/8/06 | SLM Trust 2006-B |
| xxxxxxxxxx5197 (Hasan Loan 9-2) | 10-08-04 | $18,615.00 | The First National Bank in Sioux Falls | 6/8/06 | SLM Trust 2006-B |
| xxxxxxxxxx5205 (Hasan Loan 12) | 07-07-05 | $3,500.00 | The First National Bank in Sioux Falls | 6/8/06 | SLM Trust 2006-B |

| xxxxxxxxx5213 (Hasan Loan 13) | 07-14-05 | $21,421.00 | The First National Bank in Sioux Falls | 6/8/06 | SLM Trust 2006-B |

Id. at 4.

      The EFG Loans, represented in the first chart above, were originated by Richland State Bank. Doc. 72 at 3 (Affidavit of Carl O. Cannon). On November 18, 2003, Sallie Mae acquired AMS, the then-holder of the EFG Loans, and in doing so, it acquired the EFG Loans. Id. Sallie Mae began servicing EFG Loan 14-1 on January 30, 2002; EFG Loan 19-1 on March 7, 2003, and EFG Loan 1-3 on July 20, 2001. Id. Sallie Mae has serviced the EFG Loans ever since. Id. For each EFG Loan, Hasan was mailed a letter stating that Sallie Mae would "handle the administrative and service functions." Id.

      The Signature Loans, represented in the second chart above, were originated by either The First National Bank in Sioux Falls or Bank One. Id. at 4. Through subsequent transactions, SLM Trust 2006-B, an affiliate of Sallie Mae, became the holder of the Signature Loans. Id. Sallie Mae notified Hasan upon the purchase of each of his Signature Loans. Id. at 6. Sallie Mae began servicing the Signature Loans at origination and has continued to service them ever since. Id. at 4.

      Hasan admits that Sallie Mae is the servicer of these loans. Doc. 63 at 1. He has submitted no evidence that anyone other than Sallie Mae has ever serviced his loans. In his affidavit, Hasan admits that he has not paid these loans in accordance with the loans' terms. Doc. 63 at 4.[4]

---

[4] Hasan attempts to change his assertions in response to Sallie Mae's Cross Motion for Summary Judgment, Doc. 78, but those assertions, neither sworn nor supported by the documentary evidence, are pure hearsay. "It is black-letter law that hearsay evidence cannot be considered on summary judgment" for the truth of the matter asserted. Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 17 (1st Cir. 2007). Genuine issues of material fact "can be created only by materials of evidentiary quality." Hannon v. Beard, 645 F. 3d 45, 49 (1st Cir. 2011). As

Hasan seeks to dispute that he sought a forbearance on the seven Signature Loans when he enrolled in graduate school in January of 2010 at the University of Massachusetts Lowell. Doc. 63 at 2. The import of which goes to the ultimate issue of when the loans should come off his credit reports. Hasan does admit to seeking, and obtaining, a forbearance on the three EFG loans. Id. The documentary evidence submitted by Sallie Mae, the authenticity of which Hasan does not dispute, demonstrates that Hasan sought and obtained a forbearance for all ten private loans. On or about July 16, 2006, Hasan applied to Sallie Mae for a forbearance on the payments of his Loans to accommodate a fellowship at the Boston Biomedical Research Institute. Doc. 71 at 5. Hasan's application states, in relevant part:

> I request a postponement of my private education loan payments while I am in a … fellowship… program. I understand that, according to the terms of my Promissory Note, my payments of principal and interest may be postponed or I will be responsible for monthly payments of accrued interest. Unpaid accrued interest may be capitalized to the extent permitted by the terms of my Promissory Note. Capitalization will increase the principal balance of my loan(s).

Id. Hasan submitted applications for forbearances again on or about July 9, 2007; May 29, 2008; July 1, 2009; and July 16, 2010 – all of which contained similar language. Id. at 6. In a letter to Sallie Mae dated July 16, 2010, Hasan wrote:

> According to the Sallie Mae website it states under private loans can be deferred while in school. The website also states that a form no longer needs to be submitted as long as the university is in your clearing house data base. The University of Massachusetts at Lowell is in your data base. The school code is [xxxxxxx] … Please make sure that my accounts are deferred and all late fees and other charges are rolled back.

Id. (emphasis in original).

---

a result, Hasan's unsupported assertions must be, and are, disregarded. Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008).

On August 4, 2010, Sallie Mae sent Hasan a letter confirming that all the Signature Loans were placed in a forbearance through June 1, 2012. Id. The letter itemizes each of the loans by loan date, original loan amount, outstanding principal balance, interest rate, and loan program. Id. The letter states:

> Because we already verified your enrollment, you don't need to send us a completed deferment form. We'll contact you right before your deferment ends to notify you of your new payment amount. In the meantime, if anything changes that could affect your deferment status, please be sure to let us know immediately. If you want to end your deferment, please contact us.

Id.

Plainly, Hasan sought, and Sallie Mae granted, deferments on all of Hasan's private loans. There is no evidence that Hasan ever responded to the letter advising Sallie Mae that he did not want a deferment of all his private loans. Despite the documentary evidence, which contain his own contemporaneous admissions, Hasan denies that he requested the deferment. This denial is without force. See note 4, supra.

In March 2012, Sallie Mae received a clearinghouse update report from UMass-Lowell, wherein it was reported that Hasan was enrolled less than half time effective December 23, 2011. Doc. 71 at 6. This update was retroactively processed for the Loans on April 27, 2012. Id. As a result, Hasan's school forbearance end date was changed to December 23, 2011 because borrowers must be enrolled at least half time in order to qualify for the school forbearance. Id. Hasan was sent delinquency notices shortly thereafter. Id. After six-plus months of delinquency, Hasan went into default. Id. Sallie Mae charged-off Hasan's Loans in November and December of 2012. Id. at 7. Sallie Mae is scheduled to stop reporting the Loans as charged-off in late 2019, seven years after the Loans were first charged-off. Id. at 7.

II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

III.    DISCUSSION

Hasan first argues that because he has not been provided the actual assignment of his loan from the original holder to any other entity or from Sallie Mae to any current holder, Sallie Mae violated Chapter 93A and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), when it reported the default to the CRAs because it cannot prove who owns the loan. His argument is fallacious. There is no dispute that Sallie Mae was the servicer of the loans at all relevant times.  Student loan servicing is defined as:

>  (i)
>  (A) Receiving any scheduled periodic payments from a borrower or notification of such payments and
>  (B) Applying payments to the borrower's account pursuant to the terms of the post-secondary education loan or of the contract governing the servicing;
>  (ii) During a period when no payment is required on a post-secondary education loan,
>  (A) Maintaining account records for the loan and
>  (B) Communicating with the borrower regarding the loan, on behalf of the loan's holder; or
>  (iii) Interactions with a borrower, including activities to help prevent default on obligations arising from post-secondary education loans, conducted to facilitate the activities described in paragraph (i) or (ii) of this definition.

12 CFR 1090.106

As the servicer of the loans, upon Hasan's admitted default, Sallie Mae furnished the CRAs with information about the default. Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999) (noting that term "furnisher of information" is not defined within the FCRA and defining the term as an entity which transmits information concerning a particular debt owed by a consumer to a CRA). That Sallie Mae has not provided the actual assignment or transfer of ownership from, i.e., Navient to AMS, an affiliate of Navient (F/K/A Sallie Mae), is wholly irrelevant in the circumstances of this case. While it may be correct that under some circumstances, a party seeking to enforce the terms of a loan may be required to prove ownership, that is not the case here. Dudley v. S. Va. Univ. (In re Dudley), 502 B.R. 259 (Bankr. W.D. Va. 2013) (applying Massachusetts law). Sallie Mae is not seeking to enforce the terms of the loan by asserting ownership of the loans. Sallie Mae is not seeking anything by this action. Hasan admits he defaulted on his loans. Sallie Mae reported the default. This ends the inquiry.[5]

---

[5] The parties did not raise the issue of federal preemption or whether a private right of action under FCRA exists against Sallie Mae as a furnisher of information. See Lee v. Cellco P'Ship, 480 F. Supp. 2d 422 (D. Mass. 2007) (holding the FCRA preempts state law claims). Thus, the Court does not address these issues, which likely would have further undermined Hasan's claims.

Next, Hasan asserts that because he did not make any payments on the Signature loans starting in 2008 and he did not request a deferment of the Signature loans, the default on those loans should have been reported starting in 2008 instead of 2012, which would mean that the derogatory information would come off his credit report in 2015 instead of 2019. The undisputed evidence establishes conclusively that Hasan asked for, and obtained, a deferment of all his private loans. He brings forth no evidence that he rejected the deferment, or that during the deferred period he made payment on the loans. Accordingly, Hasan's assertion is rejected as no reasonable jury could conclude that Hasan did not ask for, obtain, and benefit from a deferment. When the deferment ended as a result of Hasan not going to school full time, and he still failed to make payments, Sallie Mae reported the default to the CRAs. This ends the inquiry on this issue.

## CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment, Doc. 63, is DENIED, and Defendant's Cross Motion for Summary Judgment, Doc. 69, is ALLOWED. The clerk will enter judgment in favor of Navient Solutions, Inc., and close the case.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge